**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| KATHRYN KINGHAM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 2:15-cv-01555-APG-GWF<br><br>**ORDER GRANTING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 31) |

　　　　Plaintiff Kathryn Kingham was injured in a car accident when Samuel Mason, who was intoxicated, rear-ended the vehicle in which Kingham was a passenger. Several other people were injured in the accident, so Mason's insurance coverage was split amongst them, with Kingham receiving $6,180. Kingham then sought underinsured motorist payments from her own insurer, defendant State Farm Mutual Automobile Insurance Company. Kingham initially sought $25,000 in benefits. State Farm initially offered $3,900 and then increased its offer to $5,900. Kingham later increased her demand to the full $50,000 policy limit after she continued treatment and had neck surgery. State Farm never increased its offer. Kingham sued State Farm for breach of contract, bad faith, and unfair claims practices.

　　　　State Farm moves for summary judgment on Kingham's claims for bad faith and unfair claims practices, as well as her request for punitive damages. As to bad faith, State Farm contends that because it offered to pay something on the claim, it cannot be said to have denied it, and thus no bad faith claim lies. Alternatively, State Farm argues that its valuation of Kingham's claim was reasonable and therefore no genuine dispute about bad faith remains. As to the unfair claims practices, State Farm argues that Nevada law requires that a State Farm officer, director, or department head know about the alleged unfair claims handling practice, and that Kingham has provided no such evidence. State Farm also argues that, in any event, it did not engage in any

unfair claims handling practices and that Kingham has no evidence of damages arising from any such practices. Finally, State Farm argues there is no evidence to support punitive damages.

Kingham responds that there is a genuine dispute about State Farm's failure to conduct a timely and thorough investigation into her claim because, for example, it did not timely request medical records, it did not obtain a statement from her, and it did not request an independent medical exam. She asserts the failure to investigate led to an unreasonably low valuation of her claim. As to the unfair claims practices, Kingham asserts that the requirement of showing knowledge by senior State Farm officials applies only to prosecutions of an insurer by the Nevada Commissioner of Insurance. She also argues the same evidence of bad faith shows State Farm engaged in unfair claims practices. Finally, Kingham argues that it is premature to rule on her request for punitive damages.

I deny State Farm's motion on Kingham's bad faith claim. I grant State Farm's motion on Kingham's claim for unfair practices and her request for punitive damages.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Bad Faith

State Farm argues that because it paid something on Kingham's claim, it did not "deny" it, and thus there can be no bad faith claim. State Farm's argument, taken to its logical conclusion, would eviscerate bad faith claims. An insurer would need to pay only a nominal sum and then claim that because it paid something it did not "deny" the claim. Moreover, Nevada law provides that an unreasonable delay in payment can constitute bad faith. *See Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) ("Generally, this court has addressed an insurer's breach of the implied covenant of good faith and fair dealing as the unreasonable denial or delay in payment of a valid claim."). Thus, a partial payment does not insulate the insurer from a bad faith claim if it delays or denies paying the entire loss. *See Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) ("An insurer fails to act in good faith when it refuses without proper cause to compensate the insured for a loss covered by the policy." (quotation omitted)).

"Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Potter*, 912 P.2d at 272. An insurer lacks proper cause to deny a claim when it has an "actual or implied awareness" that no reasonable basis exists to deny the claim. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986); *see also Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991) (stating bad faith is "the absence of a reasonable basis for denying benefits . . . and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim") (quotation omitted)). The quality of the insurer's investigation may be evidence of an insurer's knowledge or "reckless disregard as to the reasonableness of its denial." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 863 F. Supp. 1237, 1249 (D. Nev. 1994). Summary judgment should be denied "when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989).

Viewing the facts in the light most favorable to Kingham, genuine disputes remain about whether State Farm unreasonably refused to offer a higher amount and recklessly disregarded the

lack of a reasonable basis for not increasing its top offer of $5,900.  State Farm contends its offer was reasonable because there were gaps in treatment, Kingham had pre-existing degenerative disk disease, and Dr. Rosen conducted a records review and concluded the injections and neck surgery were not related to the accident.  However, State Farm never took a statement from Kingham, nor did it request an independent medical exam (IME) despite considering an IME multiple times. ECF Nos. 31-21 at 131-32, 134-35, 137-38; 36-1 at 14-15, 24-25; 36-4 at 2.  A reasonable jury could find that had it done so, it could have cleared up some of its questions about the gaps in Kingham's treatment, whether Kingham had any pre-existing conditions, and whether Kingham's surgery and other treatment were causally connected to the accident. ECF Nos. 31-21 at 138, 142; 36-1 at 15, 24; 36-4 at 2; 36-5 at 12-19, 24 (Kingham deposition testimony explaining gaps in treatment, continuing pain, efforts at home therapy exercises, and impacts on life activities).  A reasonable jury also could conclude that State Farm chose not to further investigate because, based on what it did know, it did not want answers to its questions.

State Farm questioned the gaps in treatment but a genuine dispute remains about whether notes in the medical records explained the gaps. *See, e.g.*, ECF Nos. 31-4 at 11-12 (Dr. Rosen's review of medical records reflecting doctor's notes of independent home exercise programs); 31-8 at 141 (indicating Kingham "self-discharged" after contracting the flu but was referred back to physical therapy due to "lack of resolution of symptoms"); 31-24 at 60 (continued pain).  A genuine dispute remains about whether State Farm unreasonably concluded that the gaps in treatment meant Kingham had fully recovered even though medical records showed Kingham was attempting to treat herself through home exercise programs but still had pain and limited range of motion. ECF Nos. 31-24 at 68-69; 36-1 at 22.  Dr. Rosen noted that it was "unclear" why there were gaps in treatment. ECF No. 31-4 at 14.  But instead of clearing up any confusion, State Farm stuck to its offer without further investigation.  A reasonable jury could conclude State Farm did not interview Kingham or conduct an IME because it did not want answers to its questions, particularly given that it already had some indication from the medical records of what those

answers would be. A jury could find State Farm wanted a basis to keep its offer unreasonably low by citing a concern about gaps in treatment.

Likewise, if State Farm had questions about Kingham's pre-accident medical history, it could have interviewed her to determine the names of her pre-accident doctors and to ask why she had taken some medication in the past. State Farm had an authorization from Kingham to obtain her medical records, so once it obtained the names of her doctors, it could have acquired her records. But instead of investigating Kingham's pre-accident condition, it relied on a single notation in a post-accident x-ray that showed degenerative disk disease. ECF No. 31-24 at 61. A reasonable jury could conclude that State Farm avoided learning about Kingham's pre-accident medical history because it did not want to risk learning she had no relevant pre-existing condition.

Kingham also has presented evidence that State Farm did not consider all elements of her damages, including the impact on her daily life activities and future pain and suffering, despite notations in the medical records about these losses. ECF Nos. 36-1 at 21; 36-4 at 2-3; 36-5 at 8-10; 36-6 at 1, 5. State Farm did not interview Kingham about these topics. State Farm relies on notations in the medical records that Kingham had reached maximum medical improvement and stopped treating. But maximum medical improvement does not mean that the injury has healed. A reasonable jury could find that State Farm recklessly disregarded notations in the medical records that Kingham still suffered from pain and mobility issues that may never resolve, resulting in her inability to enjoy activities (such as golf) like she did before the accident. ECF Nos. 31-8 at 131; 31-24 at 60, 68; 36-1 at 29-30.

Kingham also has presented evidence from which a reasonable jury could conclude that State Farm's reliance on Dr. Rosen's review of Kingham's medical records was unreasonable. Dr. Rosen could not link the cervical injections and surgery to the accident because he concluded Kingham had pre-existing degenerative disk disease (even though he noted the accident likely exacerbated any pre-existing degenerative disease). ECF No. 31-41 at 7-8. However, Kingham's doctors found a causal link. ECF Nos. 31-5 at 10, 21, 27, 41; 31-8 at 131; 31-24 at 68-69; 36-1 at 25; 36-12. Those doctors actually examined Kingham. Dr. Rosen did not. State Farm

nevertheless did not interview Kingham or request an IME. A jury may find this puzzling in the face of evidence that, when determining whether to make payment under the medical payments coverage of Kingham's policy, State Farm found the injections were related to the accident. ECF No. 31-4 at 55-73; 36-2 at 2. Yet when State Farm was evaluating Kingham's underinsured motorist claim (under which it faced greater financial exposure), it found those same injections were not related to the accident. State Farm asserts the difference arises from the two types of coverage being evaluated differently, but both would require a causal connection to the car accident. *See* ECF No. 31-7 at 63 (State Farm stating to a treatment provider that for the medical payments, it would consider treatment that was related to the car accident).

Finally, the evidence may support an inference that State Farm was determined to stick to its $5,900 offer regardless of what was presented to it. State Farm's October 31, 2013 offer stated that State Farm was "unable to relate treatment after 9/16/09 including the injections and surgery directly to the motor vehicle accident . . . ." ECF No. 31-20. State Farm reiterated its $5,900 offer. *Id.* Dr. Rosen conducted his record review approximately a year later. ECF No. 31-41. Dr. Rosen concluded that Kingham's treatments through June 2010 were related to the accident. *Id.* at 8. Despite its own expert concluding that Kingham was still suffering from injuries and properly obtained treatment nine months beyond what State Farm had previously concluded, State Farm did not budge on its offer. ECF No. 31-21 at 111.

In sum, viewing the evidence in the light most favorable to Kingham, a reasonable jury could find that State Farm had an actual or implied awareness that its offers were unreasonably low based on the evidence State Farm had, as well as a reckless disregard for obtaining evidence that may have undercut the reasoning for its offer. I therefore deny State Farm's motion for summary judgment on the bad faith claim.

### B. Unfair Claims Practices

Nevada Revised Statutes § 686A.310 identifies certain conduct as unfair practices for which an insured may sue "for any damages sustained by the insured as a result of the commission of any [such] act . . . ." State Farm contends Kingham has no evidence of damages

arising from State Farm's alleged unfair practices, as opposed to damages arising from the auto accident. Kingham did not respond to that argument. Kingham thus has not identified particular practices, what damages arose from those practices, and what evidence raises a genuine dispute precluding summary judgment on the issue of damages arising from those practices. I will not guess what damages Kingham claims arise from State Farm's alleged unfair practices nor search the record for evidence in support. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001). I therefore grant State Farm's motion on this claim.

### C. Punitive Damages

"[P]roof of bad faith, by itself, does not establish liability for punitive damages." *McClelland*, 780 P.2d at 198. Rather, to recover punitive damages, a plaintiff must also show evidence of "oppression, fraud, or malice, express or implied." *Id.* (quotation omitted).

Kingham does not identify on what basis she seeks punitive damages. Nor does she identify what evidence would support a finding of fraud, malice, or oppression. Kingham suggests State Farm's motion is premature but nothing precludes State Farm from moving for summary judgment on the issue of whether there is sufficient evidence to support punitive damages. Kingham has failed to point to evidence raising a triable issue of fact on punitive damages. I therefore grant this portion of State Farm's motion.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant State Farm Mutual Automobile Insurance Company's motion for summary judgment **(ECF No. 31) is GRANTED in part**. The motion is granted as to plaintiff Kathryn Kingham's claim for unfair claims handling practices and her request for punitive damages. The motion is denied as to Kingham's bad faith claim.

DATED this 28th day of September, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE